UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 17-cv-21562-GAYLES/OTAZO-REYES

JOSHUA DEBERNARDIS and
CHRISTINA DAMORE, *on behalf of
themselves and all others similarly situated*,

          **Plaintiffs,**

v.

IQ FORMULATIONS, LLC, *a Florida limited
liability company*, and EUROPA SPORTS
PRODUCTS, INC.,

          **Defendants.**
_____/

## ORDER

**THIS CAUSE** comes before the Court on Defendant, IQ Formulations, LLC's Motion to Dismiss Class Action Complaint [ECF No. 28] ("IQ's Motion") and Defendant Europa Sports Products, Inc.'s Motion to Dismiss Class Action Complaint [ECF No. 29] ("Europa's Motion"). The Court has reviewed the Complaint, the filings and argument of counsel, and the applicable law and is otherwise fully advised. For the reasons that follow, the motions to dismiss are granted.

### I.    BACKGROUND

Plaintiffs Joshua DeBernardis and Christina Damore (collectively, "Plaintiffs") each purchased the dietary supplement Metabolic Nutrition Synedrex ("Synedrex"). According to the Complaint, Synedrex and another dietary supplement, Metabolic Nutrition E.S.P. ("E.S.P.") (collectively, "Supplements"), contain MethylPentane Citrate, a stimulant commonly known as DMBA. Plaintiffs allege that DMBA is an illegal ingredient, rendering the supplements adulter-

ated and misbranded for the purposes of the United States Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 301, *et seq.* ("FDCA") and violative of state consumer protection laws that incorporate the FDCA. Plaintiffs—a citizen of Illinois and a citizen of New York, respectively—bring suit against Defendant IQ Formulations, LLC ("IQ"), the manufacturer of the supplements, and against Europa Sports Products, Inc. ("Europa"), a distributor of the supplements.

Federal law broadly prohibits "[t]he introduction or delivery for introduction into interstate commerce of any food, drug, device, tobacco product, or cosmetic that is adulterated or misbranded." 21 U.S.C. § 331(a). A dietary supplement is considered "adulterated" if it "contains a dietary ingredient that . . . is a new dietary ingredient for which there is inadequate information to provide reasonable assurance that such ingredient does not present a significant or unreasonable risk of illness or injury." *Id.* § 342(f). A supplement containing a "new dietary ingredient"—that is, a dietary ingredient that was not marketed in the United States before October 15, 1994—may nevertheless be marketed and sold if:

> (1) The dietary supplement contains only dietary ingredients which have been present in the food supply as an article used for food in a form in which the food has not been chemically altered[; or]
>
> (2) There is a history of use or other evidence of safety establishing that the dietary ingredient when used under the conditions recommended or suggested in the labeling of the dietary supplement will reasonably be expected to be safe and, at least 75 days before being introduced or delivered for introduction into interstate commerce, the manufacturer or distributor of the dietary ingredient or dietary supplement provides the Secretary with information, including any citation to published articles, which is the basis on which the manufacturer or distributor has concluded that a dietary supplement containing such dietary ingredient will reasonably be expected to be safe.

*Id.* § 350b.

Plaintiffs allege that DMBA is a new dietary ingredient that meets neither of the statutory exceptions of § 350b, and is thus adulterated pursuant to § 342(f). Plaintiffs argue that because

the Supplements list DMBA as a dietary ingredient, they are likewise "misbranded" pursuant to § 343(a). *See id.* § 343(a) ("A food shall be deemed to be misbranded . . . [i]f . . . its labeling is false or misleading in any particular . . . ."). Plaintiffs argue that by including DMBA as an ingredient on the Supplements' labels, IQ is implicitly representing that DMBA is an approved ingredient. Although the FDCA contains no private right of action, a number of state consumer protection laws incorporate the food labeling provisions of federal law and provide a mechanism for private suit. It is under these provisions of state law that Plaintiffs bring their Complaint.

Plaintiffs allege five (5) counts: (1) Violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.201, *et seq.*, against IQ on behalf of a nationwide class; (2) Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, *et seq.*, against both Defendants on behalf of an Illinois subclass; (3) Violation of New York General Business Law § 349, *et seq.*, against both Defendants on behalf of a New York subclass; (4) Fraud against both Defendants on behalf of the Illinois and New York subclasses; and (5) Unjust Enrichment against both Defendants on behalf of the nationwide class, or alternatively, the Illinois and New York subclasses. In each of these counts, Plaintiffs allege that they suffered economic injury because they would not have purchased the Supplements had they known that one of the ingredients listed on the labels was a new dietary ingredient that had not been approved by the FDA. Defendants moved to dismiss the Complaint arguing, *inter alia*, that Plaintiffs lack standing to bring this action. On March 27, 2018, the Court held a hearing on the motions.

## II.    LEGAL STANDARD

"[T]he doctrine of standing serves to identify those disputes which are appropriately resolved through the judicial process." *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990). As the party

invoking federal jurisdiction, Plaintiffs bear the burden of demonstrating that they have standing to sue. *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231 (1990). The "irreducible constitutional minimum of standing" requires an "injury in fact" that is both "concrete and particularized," and "actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (citations and internal quotation marks omitted). A plaintiff must also demonstrate "a causal connection between the injury and the conduct complained of," and "a likelihood that a court ruling in [the plaintiff's] favor would remedy [his] injury." *Id.* As standing is a threshold determination, the plaintiff must "clearly . . . allege facts demonstrating" standing. *Warth v. Seldin*, 422 U.S. 490, 518 (1975). And given that this case is brought as a putative class action, "[t]hat a suit may be a class action . . . adds nothing to the question of standing, for even named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'" *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 40 n.20 (1976) (quoting *Warth*, 422 U.S. at 502).

### III. DISCUSSION

In their Complaint, Plaintiffs do not allege that they have suffered any physical injury, or that the products fail to work as advertised. Rather, they allege a purely economic harm: that because DMBA is a new dietary ingredient, which could not be lawfully sold, the products were worthless; and had Plaintiffs known this, they would not have purchased the supplements. While economic injury may, broadly speaking, be sufficient to confer standing, the question here is whether Plaintiffs' particular theory of economic harm—rather than, for instance, a premium paid in reliance on particular marketing claims—is sufficient.

Defendants rely on four cases out of courts in the Third Circuit for the proposition that

4

Plaintiffs' theory of damages is insufficient to constitute an injury in fact for the purposes of standing. *See Koronthaly v. L'Oreal USA, Inc.*, 374 F. App'x 257 (3rd Cir. 2010); *James v. Johnson & Johnson Consumer Cos., Inc.*, No. 10-cv-03049, 2011 WL 198026 (D.N.J. Jan. 20, 2011); *Medley v. Johnson & Johnson Consumer Cos., Inc.*, No. 10-cv-02291, 2011 WL 159674 (D.N.J. Jan. 18, 2011); *Hubert v. Gen. Nutrition Corp.*, No. 15-cv-01391, 2017 WL 3971912 (W.D. Pa. Sept. 8, 2017).

*Hubert* is strikingly similar to the instant matter. There, "Plaintiffs allege[d] that picamilon, BMPEA and acacia rigidula were listed on the labels of a variety of supplements available for sale at GNC, including products that they purchased," and "that through this labeling, GNC misrepresented that those substances were safe and could be legally sold in the United States." *Hubert*, 2017 WL 3971912, at *3. The *Hubert* plaintiffs "contend[ed] that they incurred economic injury because they purchased products with false, misleading and inaccurate labeling, which omitted information material to their purchases." *Id.* at *4. That court found that while exclusively economic injury could give rise to standing, the plaintiffs had failed to adequately allege economic injury. *Id.* at *5. The court first found that "[a]lthough Plaintiffs broadly aver[ed] that GNC's alleged omissions and misrepresentations caused them to pay more for supplements than they otherwise would have paid, that 'threadbare' allegation, without supporting factual allegations, is insufficient to establish an injury-in-fact." *Id.* Further, the *Hubert* court roundly rejected a "benefit of the bargain" theory of injury. The court noted that—as here—the *Hubert* plaintiffs alleged neither adverse health consequences nor that the supplements failed to perform as advertised, and that the plaintiffs "would have received the benefit of their bargain so long as the supplements worked as intended, meaning they provided weight-loss and sports nutrition benefits, and they produced no adverse health effects." *Id.* at *8.

Plaintiffs' allegations here similarly fall short. As in *Hubert*, Plaintiffs allege that they each purchased one of the products, though they do not allege that they consumed it. [ECF No. 1, ¶¶ 7–8]. They broadly allege that "both Synedrex and E.S.P. contain an unlawful ingredient, MethylPentane Citrate, and for that reason, each Product is similarly adulterated for purposes of the FDCA, and similar state law, and is unsafe for human consumption, and cannot be lawfully sold to consumers." [*Id.* ¶ 20]. In a similarly conclusory manner, Plaintiffs further allege that "[b]y failing to disclose to Plaintiffs and putative Class Members that the Products contain unlawful dietary ingredients, the Products' labels are false and misleading," and therefore "misbranded." [*Id.* ¶¶ 37, 40]. And "[b]ecause misbranded products cannot be legally sold or possessed, they have no economic value," making any price paid by Plaintiffs "an unwarranted amount." [*Id.* ¶ 50]. Apart from these conclusory allegations, Plaintiffs do not allege that the Supplements failed to perform as advertised or caused adverse health effects. Nor do they allege that particular representations caused them to pay more for the Supplements than they would have paid for a comparable product. The broad claim that they would not have purchased the Supplements at all had they known that IQ had failed to follow the FDA's approval procedure regarding an ingredient is insufficient to confer standing.

At the Court's March 27, 2018, hearing on the motions, Plaintiffs' counsel cited a number of cases and argued that these cases stand for the proposition that Plaintiffs' alleged harm here is sufficient to confer standing. *See Reilly v. Chipotle Mexican Grill, Inc.*, No. 15-cv-23425-Cooke/Torres, 2016 WL 10644065 (S.D. Fla. Apr. 20, 2016); *Reynolds v. Wal-Mart Stores, Inc.*, No. 14-cv-381, 2015 WL 1879615 (N.D. Fla. Apr. 23, 2015); *Askin v. The Quaker Oats Co.*, 818 F. Supp. 2d 1081 (N.D. Ill. 2011); *In re Aqua Dots Prods. Liab. Litig.*, 654 F.3d 748 (7th Cir. 2011); *Morgan v. Wallaby Yogurt Co., Inc.*, No. 13-cv-00296, 2013 WL 5514563 (N.D. Cal. Oct. 4, 2013); *Kosta v. Del Monte Corp.*, No. 12-cv-01722, 2013 WL 2147413 (N.D. Cal. May 15,

2013). None of these cases support Plaintiffs' contention. The two cases from within the Eleventh Circuit, *Reilly* and *Reynolds*, deal specifically with a premium payment analysis. In *Reilly*, the plaintiff alleged that she paid a premium price for Chipotle food because Chipotle represented that its products were non-GMO, despite the undisputed fact that the meat and dairy came from animals who consumed GMO-rich feed. *Reilly*, 2016 WL 10644065, at *2. While it is true that the *Reilly* plaintiff alleged that her damages were "the purchase price of the product and/or the premium paid by Plaintiff and the Class for said products," Compl. ¶ 39, *Reilly*, 2016 WL 10644065, the Court relied exclusively on the premium prices theory of economic injury to find standing. *Id.* at *2. The same is true of *Reynolds* and the other cases. *See, e.g.*, *Reynolds*, 2015 WL 1879615, at *2 ("Plaintiffs allege that they have paid more money based on the misleading label of the juice."); *Askin*, 818 F. Supp. 2d at 1084 ("Askin alleges that although he has not been physically harmed by Quaker's products, he paid more for those products than he would have had he known they contain an ingredient he was determined to avoid because of its known health risks. That price differential represents a concrete injury-in-fact."); *Morgan*, 2013 WL 5514563, at *4 (distinguishing other cases finding no standing on the grounds that "the plaintiffs [in *Morgan*] alleged that they paid 'a premium price for inferior or undesirable ingredients.' Reading the Complaint in the light most favorable to the plaintiffs, as the Court must, the plaintiffs are presumably claiming overpayment. Thus, they adequately allege injury.") (internal citations omitted).

Plaintiffs' allegations here are simply insufficient to establish injury in fact and this Court lacks jurisdiction.

## IV. CONCLUSION

Based on the foregoing, it is **ORDERED AND ADJUDGED** as follows:

1. Defendants' motions to dismiss [ECF Nos. 28 & 29] are **GRANTED**;

2. Plaintiffs' Complaint [ECF No. 1] is **DISMISSED WITHOUT PREJUDICE**; and

3. this action is **CLOSED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 29th day of March, 2018.

_____
DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE